HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UBS FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW HERGERT, <br><br> Defendant. | CASE NO. C13-1825RAJ <br><br> TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

This matter comes before the court on initial consideration of Plaintiff's motion for a temporary restraining order ("TRO"). Dkt. # 3. For the reasons stated below, the court imposes a limited TRO to preserve the status quo while it awaits a response from Defendant to Plaintiff's motion. The clerk shall RENOTE the motion for October 15.

## II. BACKGROUND & ANALYSIS

Defendant UBS Financial Services, Inc. ("UBS") previously employed Defendant Andrew Hergert as an Investment Associate in its Seattle office. On October 4, Mr. Hergert resigned. He submitted a resignation letter informing UBS that he had accepted work at Raymond James Financial Services in Bellevue. He informed UBS that "pursuant to the Protocol," he was taking a list of client names, addresses, telephone numbers, email addresses, and account types with him. He provided a copy of the list to UBS. The court has no idea how many clients were on the list, because UPS has not provided that evidence. It avers, however, that Mr. Hergert worked in support of one of

ORDER – 1

its more senior investment advisors, and that advisor's clients have nearly $100 million in assets under management at UBS, generating nearly $1 million in annual revenue for UBS.

The "Protocol" that Mr. Hergert cited is an agreement amongst various investment entities (including, apparently, UBS and Raymond James) that they will forego legal remedies against each other when one of their "registered representatives" leaves employment at one Protocol signatory to work for another signatory.  The Protocol requires departing representatives to follow specified procedures regarding the clients with whom they worked.

UBS contends that the Protocol does not apply to Mr. Hergert for various reasons, and that Mr. Hergert's legal obligations are instead governed by Washington's version of the Uniform Trade Secret Act ("UTSA," RCW Ch. 19.108), a confidentiality agreement Mr. Hergert entered with UBS, and common law.

UBS sued yesterday and filed a motion for a TRO and preliminary injunction at about 3:40 p.m.  Mr. Hergert's counsel has at least received notice of UBS's complaint and motion, although it is not clear if Mr. Hergert has been served with process or agreed to accept service.  In a brief conversation with court staff yesterday, Mr. Hergert's counsel admitted that Mr. Hergert has begun work at Raymond James.  Although the court's local rules presumptively require a response to a motion for a TRO no later than 48 hours after the motion's filing, Mr. Hergert's counsel asked to have until at least Tuesday, October 15, to submit a response.

The "standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction." *Beaty v. Brewer*, 2011 U.S. App. LEXIS 11391, at *8 (9th Cir. May 25, 2011).  The primary difference is that a court can issue a TRO without notice to the adverse party in certain circumstances.  Fed. R. Civ. P. 65(b)(1)(A).  Putting aside concerns about notice to the non-moving party, the court may

ORDER – 2

issue a TRO where a party establishes (1) a likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). In cases where clear irreparable harm would result and there are serious questions going to the merits, a court may issue provisional relief for the purpose of permitting it to consider the merits of the dispute on a reasonable timetable. *Id.* at 1134. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) (noting that it appears settled that *Winter* did not "change the requisite showing for any individual factor [in the Ninth Circuit's preliminary injunction analysis] other than irreparable harm").

In this case, Mr. Hergert's letter of resignation is an admission that he has taken a client list from UBS, and it strongly suggests that he intends to use that list to solicit those clients to bring their business to Raymond James. According to UBS's Seattle manager, Mr. Herbert expressly admitted his intent to solicit UBS clients when they spoke following his resignation. UBS has raised at least serious questions that Mr. Hergert may not take shelter in the "Protocol," and serious questions as to the merits of its claims that Mr. Hergert intends to violate his confidentiality obligations and the UTSA by relying on that list. A customer list, whether written or merely memorized, can be a trade secret. *See Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 943 (Wash. 1999). If UBS were to lose a client because of Mr. Hergert's misappropriation of that trade secret, it would suffer irreparable harm in the form of unquantifiable future damages. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the

ORDER – 3

possibility of irreparable harm."). On this record, the balance of hardships tips sharply in its favor, because whereas Mr. Hergert can resume solicitation of customers in the event that he successfully opposes injunctive relief, UBS is unlikely to remedy the loss of customers that might result absent a TRO. The public interest does not strongly favor either party, but tips toward upholding law that prevents unfair competition.

Although Mr. Hergert has received notice of UBS's motion, he has had no realistic opportunity to respond. The court can enter a TRO with no notice at all, however, when the moving party shows that immediate and irreparable injury will result before the opposing party can be heard. Fed. R. Civ. P. 65(b)(1). Under these circumstances, given Mr. Hergert's reasonable request for additional time to oppose the motion, the court will enter injunctive relief to preserve the status quo.

For these reasons, the court imposes a limited TRO of brief duration. Mr. Hergert must oppose UBS's motion no later than 10:30 a.m. on Tuesday, October 15. UBS shall not submit a reply unless the court orders otherwise. The court will determine whether a hearing or oral argument is necessary after considering Mr. Hergert's opposition, and in any event it will enter a new order granting or denying UBS's motion for injunctive relief by the close of business on Friday, October 18, 2013.

//
//
//
//
//
//
//
//
//

ORDER – 4

### III.  TEMPORARY RESTRAINING ORDER

1) Pending further order of the court, Andrew Hergert and those working in concert with him may not contact any client for whom Mr. Hergert provided services while at UBS.  This includes but is not limited to the clients on the list that Mr. Hergert took from UBS.

2) Notwithstanding the previous paragraph, Mr. Hergert (and those working in concert with him) may contact a UBS client for whom Mr. Hergert provided services while at UBS in the following circumstances:

   a) The client contacts Mr. Hergert (or those working in concert with him) at Raymond James without being solicited (or having been solicited) by Mr. Hergert (or those working in concert with him) to do so; or

   b) Mr. Hergert (or those working in concert with him) contacts the client based *solely* on information about the client that Mr. Hergert did not acquire while at UBS.

3) In the event that a client for whom Mr. Hergert provided services while at UBS who has been solicited before this order becomes effective by Mr. Hergert (or those working in concert with him) to contact Mr. Hergert at Raymond James contacts Mr. Hergert (or those working in concert with him), he may communicate with the client *solely* for the purpose of telling the client that he is prohibited from further contact with the client until the court resolves this matter.

Given the expected brief duration of this order, the court will not impose bond at this time.  If Mr. Hergert would like the court to impose bond, he shall file a request for bond and provide evidence to support that request.

This order will become effective upon formal service of the summons and complaint and formal service of this order on Mr. Hergert.

ORDER – 5

## IV.  CONCLUSION

For the reasons stated above, the court imposes this temporary restraining order. Mr. Hergert shall respond to UBS's motion for injunctive relief no later than 10:30 a.m. on Tuesday, October 15.  The court directs the clerk to RENOTE UBS's motion (Dkt. # 3) for October 15.

Dated this 10th day of October, 2013.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 6