HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UBS FINANCIAL SERVICES, INC., <br><br>            Plaintiff, <br><br>       v. <br><br> ANDREW HERGERT, <br><br>            Defendant. | CASE NO. C13-1825RAJ <br><br> ORDER DISMISSING CASE |

## I.  INTRODUCTION

Having considered the response of Plaintiff UBS Financial Services, Inc. ("UBS") to the court's October 16 order to show cause, the court declines to enter injunctive relief and DISMISSES this action in lieu of the pending arbitration between the parties.  The court concludes that UBS made material omissions and misrepresentations in its motion for a temporary restraining order ("TRO"), and that the TRO would never have issued but for those omissions and misrepresentations.  To the extent that Defendant Andrew Hergert can demonstrate damages during the period in which the TRO was in effect, the court orders UBS to pay those damages.  UBS and its counsel shall disseminate this order in accordance with the court's instructions.

## II.  BACKGROUND & ANALYSIS

UBS came to court on October 9 with an extraordinary request.  It asked the court to impose a TRO "immediately," that is, without hearing from Mr. Hergert.  Pltf.'s Mot. (Dkt. # 3) at 13.  Rule 65 of the Federal Rules of Civil Procedure permits a court to enter

ORDER – 1

a TRO without notice in certain circumstances.  A party requesting a TRO without first permitting a response from the opposing party, however, assumes an obligation of utmost candor in informing the court of the facts justifying immediate relief.  *See*, *e.g.*, *Campbell v. Rice*, 408 F.3d 1166, 1175 (9th Cir. 2007) ("In particular, "in an ex parte proceeding, a lawyer shall inform the tribunal of *all material facts known to the lawyer* which will enable the tribunal to make an informed decision, whether or not the facts are adverse.") (quoting ABA Model Rule of Professional Conduct 3.3(d)) (emphasis in *Campbell*); Wash. RPC 3.3(f) (same).  UBS abdicated that duty in this case.  The court uses the shorthand "UBS," but the misrepresentations and omissions identified herein are likely attributable to both the UBS employees who submitted declarations to the court (and perhaps other UBS employees) as well as UBS's counsel.

The court issued the TRO on October 10 because UBS misrepresented three critical facts.  It did so by omitting some material facts entirely and offering half-truths (or worse) about other facts.

First, UBS did not disclose that Mr. Hergert had voluntarily relinquished control over the list of client information that he took from UBS to his attorneys.  From the time Mr. Hergert left UBS on October 4 to the late evening of the day before UBS filed its motion, Mr. Hergert did not have the list, and had agreed not to use it.  To be sure, Mr. Hergert's counsel had informed UBS in the early evening of October 8 that he would return the list to his client.  Nonetheless, UBS's failure to disclose that Mr. Hergert could not have used the list until late on October 8, to say nothing of its failure to disclose Mr. Hergert's good faith efforts to preserve whatever rights UBS had in the client list, was a material omission.  UBS left the court with the impression that Mr. Hergert had been doing who-knows-what with the client list since October 4, an impression that UBS knew was false.

Second, UBS strove mightily to convince the court that Mr. Hergert was not a "producing" employee at UBS. It did so because it took the position that the "Protocol"

ORDER – 2

that permits certain employees to take client lists with them when they leave UBS applies only to "producing" employees. It emphasized that Mr. Hergert was merely an "Investment Associate," that he worked solely to support Kevin Cahoon, a UBS financial advisor, and that he was paid no differently than any other support staff member. With the exception of representations about Mr. Hergert's pay, UBS's representations were literally true, but misleading. UBS did not disclose that Mr. Hergert had long been in a partnership with Mr. Cahoon in which he received a percentage of Mr. Cahoon's production, most recently a 34% slice of Mr. Cahoon's profits. Within UBS, Mr. Hergert was not a "producing" employee, but that is because UBS designated Mr. Cahoon the sole "producing" member of the partnership. Putting aside UBS's Orwellian internal designations, statements like "Hergert was not credited with any such percentage revenue split," Def.'s Mot. at 7, are misleading. Although perhaps UBS's accounting department did not credit Mr. Hergert with a revenue split, Mr. Cahoon certainly did, a fact that UBS withheld from the court. The court doubts that UBS's internal designations are more important than who ultimately receives revenue when determining who may be deemed a "producing" employee for purposes of the Protocol.

UBS's representations that Mr. Hergert was paid no differently than any other employee supporting Mr. Cahoon were, at best, deliberate efforts to mislead the court. Those representations begin with both Mr. Cahoon and Shawn MacFarlan, the manager of UBS's Seattle office. Both of them declared that Mr. Hergert "did not earn any commission, investment production fees, or revenue in the course of servicing" clients. Cahoon Decl. (Dkt. # 10-1) ¶ 8; MacFarlan Decl. (Dkt. # 4) ¶ 11. Only by a strenuous effort to give these witnesses the benefit of every doubt is the court even able to designate this statement a half-truth. UBS paid commission, revenue and the like to Mr. Cahoon, who then paid up to 34% of that money to Mr. Hergert. No reasonable person in Mr. Cahoon's or Mr. MacFarlan's shoes could doubt that the statement they made hides a relevant truth. Worse was Mr. MacFarlan's statement that Mr. "Hergert was paid in the

ORDER – 3

same manner as the Customer Service Associate, and other support personnel, assigned to Cahoon's accounts." MacFarlan Decl. (Dkt. # 4) ¶ 11. Mr. Hergert received as much as 34% of the revenue UBS attributed to Mr. Cahoon. There is no evidence that any other "support personnel" were paid 34% (or any fixed percentage) of Mr. Cahoon's revenue. Mr. Hergert's evidence, which UBS has not contradicted, shows that the Senior Client Service Associate supporting the Cahoon-Hergert partnership was not paid any percentage of the partnership's revenue. The court concludes that any reasonable person seeking relief from the court would have known that Mr. Hergert's receipt of a fixed percentage of partnership profits was a material fact, and that Mr. Cahoon and Mr. MacFarlan's statements obscured that material fact. It seems exceedingly unlikely that Mr. Cahoon or Mr. MacFarlan obscured that fact unintentionally.

Third, UBS discussed the Protocol at some length, but made no mention of a series of forgivable loan agreements that permitted Mr. Hergert to take client lists once UBS forgave the underlying loans. UBS argues that because Mr. Hergert did not introduce clients to UBS, the provisions of the loan agreements do not apply to him. That is a colorable argument. What is not a colorable argument is that it is acceptable for UBS to wholly fail to disclose the existence of the loan agreements while seeking immediate relief from the court. UBS knew that Mr. Hergert would attempt to rely on those agreements because his counsel had told UBS as much before it moved for a TRO.

But for these misleading representations and omissions, the court would not have entered a TRO without first hearing from Mr. Hergert, and it ultimately would not have entered injunctive relief at all. Many, if not all, of UBS's misrepresentations and omissions would have been questionable even in a motion where the court expected to receive a response from the opposing party. They are utterly unacceptable from a party hoping to obtain relief before the opposing party responds.

The court will not linger long on UBS's request for injunctive relief. The court has already cited the applicable standards in its prior orders. It could elaborate on its

ORDER – 4

conclusion that UBS is not likely to succeed on the merits of its claims, but the parties agree that the underlying dispute is subject to mandatory arbitration.  That arbitration has already begun.  The court declines to offer an advisory discussion of the merits.  In addition, the court is firmly convinced that UBS will suffer no irreparable harm absent injunctive relief.  No injunctive relief is appropriate.

Because of UBS's misrepresentations, Mr. Hergert was subject to a TRO from October 10 to October 16.  The court has no idea if the TRO harmed Mr. Hergert, but the court knows for certain that it would not have issued the TRO but for UBS's material omissions and misrepresentations.  The court orders the parties to meet and confer to determine if they can agree on an appropriate award to Mr. Hergert.  If they are unable to agree, Mr. Hergert is free to file a motion (no later than November 1) in which he requests an appropriate award.  The court cautions Mr. Hergert that it will only award damages to compensate him from the harm, if any, flowing from the TRO.

The court has considered imposing punitive sanctions payable to the court.  It declines to do so largely as an exercise of leniency, and because further proceedings to determine the culpability of UBS's counsel and each of the UBS employees who submitted declarations to the court would only further divert the court's resources from the remainder of the docket.  Nonetheless, UBS should not misread the court's disinterest in further pursuing this matter as an approval of its conduct.  When a party comes to court asking the court to drop everything and focus on its request for immediate relief, it cannot do so by hiding material information and relying on half-truths (or worse).

The court imposes one non-monetary sanction.  Counsel for UBS (both its local counsel and its pro hac vice counsel) must distribute this order to all attorneys at their respective firms.  Mr. MacFarlan and Mr. Cahoon must distribute it to their respective

ORDER – 5

immediate supervisors.  The court imposes this requirement not as punishment,[1] but in the interest of delineating the boundaries of acceptable advocacy.  There are probably other attorneys and litigants who believe that the adversary system of justice permits the approach UBS took in its motion for a TRO.  This court disagrees.

### III.  CONCLUSION

For the reasons stated above, the court declines to enter injunctive relief and directs the clerk to DISMISS this action in lieu of arbitration.  The court will retain jurisdiction for the purpose of entertaining Mr. Hergert's motion for compensation, if he files one.

UBS's counsel, Mr. Cahoon, and Mr. MacFarlan shall file certifications that they have disseminated this document in accordance with this order.

Dated this 25th day of October, 2013.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

---

[1] Although counsel unquestionably knew about the forgivable loan agreements and Mr. Hergert's voluntary efforts to protect the client list, it is possible that they were unaware of how UBS compensated Mr. Hergert.  If that were the case, it would mitigate counsel's culpability for the misrepresentations in the motion for TRO.

ORDER – 6